UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

        v.

DWAYNE LING,

                  Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
18-CR-92 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**
On August 2, 2023, Defendant pled guilty to a two-count Superseding Information, charging Defendant with Extortion Conspiracy, in violation of 18 U.S.C. § 1951(a), and Committing Physical Violence in Furtherance of an Extortion, in violation of 18 U.S.C. §§ 1951(a) and 2. *See* Plea Agreement, ECF No. 528. This Court hereby sentences Defendant and sets forth its reasons for his sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2). For the reasons discussed below, Defendant is hereby sentenced to a term of 235 months of incarceration, three years of supervised release with the special and standard conditions, and a $200.00 mandatory special assessment.

## I. Background

The Federal Bureau of Investigation ("FBI") led the investigation into the instant offense. Revised Presentence Investigation Report ¶ 4, ECF No. 549 ("Revised PSR"). In the fall of 2016, co-defendant Ppassim Elder ("Elder") loaned Mahmoud Kasem funds, which he spent in furtherance of his business. *Id.* ¶ 5. When Elder demanded full repayment of the loan in March 2017 and Mahmoud Kasem could not afford to repay him, Elder initiated an intimidation campaign against Mahmoud Kasem and his father, Hani Kasem. *Id.* ¶¶ 5-6. On October 23, 2017, at Elder's direction, Defendant and others entered the business owned by Mahmoud and Hani Kasem, *id.* ¶ 7, Defendant having been recruited by another co-conspirator to participate in and obtain a firearm for the offense, Addendum to the Revised PSR, ECF No. 550. After indicating they had been sent to the business by Elder because Mahmoud Kasem owed Elder money, the co-conspirators brandished a firearm and pistol-whipped Mahmoud Kasem in the

1

the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### III. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

##### 1. Family and Personal Background

Defendant was born on October 15, 1962 in Brooklyn, New York to Lawrence and Elsie Ling. Revised PSR ¶ 64. Defendant's parents divorced when Defendant was very young. *Id.* Defendant had a close relationship with his mother prior to her sudden death in 2009, *id.* ¶¶ 64-65, and reports taking her loss "extremely hard," Mitigation Report at 2, ECF No. 551-2. Defendant is not in contact with his father, who "was largely absent from his life" after "leaving the family" following his divorce from Defendant's mother. Defense Sentencing Memorandum ("Def. Mem.") at 3, ECF No. 555; Revised PSR ¶ 64; Mitigation Report at 2. Defendant has one full-sibling, two maternal half-siblings, and six paternal half-siblings. Revised PSR ¶ 65. Both of his maternal half-siblings are aware of Defendant's arrest and remain supportive of him. *Id.*

3

Defendant reported sustaining a knee injury in 2023. *Id.* ¶ 71. Defendant also reported issues with eating stemming from dental problems; he is scheduled to have two teeth pulled but is unsure when that procedure will take place. *Id.* Defendant contracted COVID-19 twice while at the Metropolitan Detention Center ("MDC"). Mitigation Report at 6.

Defendant believes he began suffering from depression when he was in his 20s. Revised PSR ¶ 75. However, Defendant's first significant mental health incident occurred in 2017, when Defendant was hospitalized after attempting suicide. *Id.* ¶ 76; *see also* Interfaith Medical Center Treatment Records, ECF No. 551-4. Defendant was in weekly therapy and prescribed an anti-depressant from the Interfaith Medical Center between his discharge and arrest for the instant offense. *Id.* ¶ 76. While the Revised PSR indicates Defendant has not received mental health treatment or medication while incarcerated at the MDC, *id.* ¶ 77, the Mitigation Report notes Defendant was diagnosed with major depressive disorder in May 2021, for which he was prescribed medication, Mitigation Report at 7. Defendant is awaiting surgery to address nerve damage in his wrists stemming from his suicide attempt; while this surgery was originally scheduled to take place in February 2020, the procedure was cancelled due to COVID-19 and has not been rescheduled. Mitigation Report at 7; *see also* Revised PSR ¶ 72. Defendant also reported he began experiencing nightmares in 2021. Revised PSR ¶ 71.

     5.     Substance Abuse

Defendant reported daily marijuana usage from age 14 through his arrest for the instant offense, excepting times where he was incarcerated. *Id.* ¶ 78. He reported some occasional cocaine usage between the ages of 22 and 37 but has not used cocaine in the past 20 years. *Id.* Defendant also reports first using alcohol when he was 10 years old, which escalated to daily alcohol consumption by the time he was 15. *Id.* ¶ 79. However, Defendant reportedly reduced

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to a two-count Superseding Information, charging Defendant with Extortion Conspiracy, in violation of 18 U.S.C. § 1951(a), and Committing Physical Violence in Furtherance of an Extortion, in violation of 18 U.S.C. §§ 1951(a) and 2. *See* Plea Agreement. Defendant faces a maximum term of imprisonment of 20 years and no minimum term of imprisonment on each count. 18 U.S.C. § 1951(a). Defendant also faces a maximum term of supervised release of three years on each count. 18 U.S.C. § 3583(b)(2). If Defendant violates a condition of release, he may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision. 18 U.S.C. § 3583(e). Pursuant to 18 U.S.C. § 3561(c)(1), Defendant is eligible for a term of probation of not less than one nor more than five years on each count. If a term of probation is imposed, a fine, restitution, or community service must be imposed, unless extraordinary circumstances exist. 18 U.S.C. § 3563(a)(2).

Defendant faces numerous other penalties. Defendant faces a maximum fine of $250,000.00 on each count pursuant to 18 U.S.C. § 3571(b). However, Defendant appears unable to pay a fine. Revised PSR ¶ 89. The Court is required to impose a mandatory special assessment of $100.00 per count pursuant to 18 U.S.C. § 3013(a)(2)(A). Pursuant to 18 U.S.C. § 3663A, Defendant also faces mandatory restitution in the total amount of the victims' losses as determined by the Court.

**D.     The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense**

of 43 because the victim was killed under circumstances that would constitute murder under 18 U.S.C. § 1111.

Under the Multiple Count Analysis laid out in U.S.S.G. §3D1.4, the combined offense level is determined by taking the group with the highest offense level and increasing that offense level by a certain number based on how many "units" exist across counts. In this instance, Group Two has a higher offense level of 43. Pursuant to U.S.S.G. §3D1.4, Group One receives zero units and Group Two receives one unit. The total number of units under U.S.S.G. §§3D1.4(a)-(c) is therefore one unit, which yields a zero-level increase in Defendant's offense level.

Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1.

Altogether, Defendant has a total adjusted offense level of 40. Revised PSR ¶ 42. All parties agree with these calculations. Revised PSR ¶ 42; Gov't Mem. at 3; Def. Mem. at 2.

All parties appear to agree Defendant has a criminal history score of three, yielding a criminal history category of II. Revised PSR ¶¶ 53-54; *see* Gov't Mem. at 3-4; Def. Mem. at 2.

A total adjusted offense level of 40, combined with a criminal history category of II, results in a recommended Guidelines range of imprisonment of 324 to 405 months. Revised PSR ¶ 91. The Court agrees with and adopts in full these Guidelines and criminal history calculations.

While each party recommends a below-Guidelines sentence, their specific recommendations vary. Probation recommends a below-Guidelines sentence of 216 months of incarceration. Revised Probation Recommendation at 1, ECF No. 549-1. 216 months of incarceration is the approximate middle of the Guidelines range as calculated in Defendant's

by—the victim impact statements of Hani Kasem's family members submitted by the Government, ECF No. 561-1.

Defense counsel, on the other hand, argues for a downward departure pursuant to Application Note 2(B) of U.S.S.G. § 2A1.1, or a variance to a Guidelines range of 188 to 235 months and a sentence at or below the bottom of that advisory range of imprisonment. Def. Mem. at 1. At the sentencing hearing, defense counsel stated she was seeking a sentence at or below 188 months of incarceration. 188 to 235 months of incarceration is the Guidelines range contemplated in Defendant's original plea agreement. Def. Mem. at 7; *see generally* Original Plea Agreement ¶ 2. Defense counsel bases this recommendation on: (1) Defendant's difficult upbringing, Def. Mem. at 3; (2) Defendant's "subordinate role and limited involvement in the overall criminal scheme," evidenced by "the fact that [Defendant] did not initiate the physical violence," *id.* at 6; (3) Application Note 2(B) to U.S.S.G. §2A1.1, which notes a downward departure to the Guidelines for Second Degree Murder may be appropriate where the §2A1.1 Guideline is cross-referenced in felony murder offenses and "the defendant did not cause the death intentionally or knowingly,"[1] *see also* Def. Mem. at 7; (4) Defendant's extreme remorse and acceptance of responsibility, *id.* at 7-8; (5) Defendant's harsh conditions of confinement at the MDC for the past six years and the continued difficult conditions he will face in prison due to

---

[1] Application Note 2(B) to U.S.S.G. §2A1.1 provides:
> **Felony Murder.**—If the defendant did not cause the death intentionally or knowingly, a downward departure may be warranted. For example, a downward departure may be war-ranted if in robbing a bank, the defendant merely passed a note to the teller, as a result of which the teller had a heart attack and died. The extent of the departure should be based upon the defendant's state of mind (*e.g.*, recklessness or negligence), the degree of risk in-herent in the conduct, and the nature of the underlying offense conduct. However, depar-ture below the minimum guideline sentence provided for second degree murder in §2A1.2 (Second Degree Murder) is not likely to be appropriate. Also, because death obviously is an aggravating factor, it necessarily would be inappropriate to impose a sentence at a level below that which the guideline for the underlying offense requires in the absence of death.

11

The parties have not drawn to the Court's attention any additional applicable policy statement. Finding none on its own, the Court proceeds to the sixth § 3553(a) factor.

### F.     The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The Court notes Probation's recommendation accounts for the sentences received by Defendant's co-conspirators. Revised Probation Recommendation at 3. The Court's sentence accounts for the sentences of Defendant's co-conspirators. For the reasons set forth in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.     The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

Restitution in this case is mandatory. *See* 18 U.S.C. § 3663A; U.S.S.G §5E1.1(a)(1). While the Revised PSR indicates "the amount of restitution is not determinable yet as the Court is still awaiting responses from Defendant's victims and his victims' families," Revised PSR ¶ 97, the Government "requests that the Court enter an order holding this defendant jointly and severally liable, along with Elder, [Wilbert] Bryant and [Frederick] McCoy, for $54,970." Gov't Mem. at 6. The Government previously submitted restitution requests on behalf of the Kasem family as to co-defendants Elder and Bryant in the amount of $54,970.00. *Id.* The appropriateness of these restitution requests has been briefed by the Government and co-defendant Bryant. The Court has not yet ruled on those requests. The Government maintains

13

s/WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: October 1, 2024
Brooklyn, New York